# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

SAMY JECROIS,

    *Plaintiffs*,

  v.

MARK SOJAK, KENNETH KOLICH, HONEY
SPIRITO, CHONDA ROSARIO, JOHN/JANE
DOE(S) I, JOHN/JANE DOE(S) II, JOHN/JANE
DOE(S) III, JOHN/JANE DOE(S) IV, AND
HUDSON COUNTY,

    *Defendants*.

Civil Action No. 16-1477

**OPINION**

**John Michael Vazquez, U.S.D.J.**

   The present matter comes before the Court on two motions to dismiss: (1) The Individual

Defendants'[1] motion to dismiss the Complaint for failure to state a claim; and (2) Hudson County's

(collectively, "Defendants") motion to dismiss. D.E. 9, 14. Plaintiff Samy Jecrois ("Plaintiff")

opposes the Individual Defendants' motion but concedes Hudson County's motion.[2] This case

concerns allegations that Defendants arrested Plaintiff without the requisite probable cause in

---

[1] The Individual Defendants consist of Mark Sojak, Detective for Hudson County Prosecutor's Office ("HCPO"); Kenneth Kolich (same); Honey Spirito (same); and Chonda Rosario, Sergeant for HCPO.

[2] The Individual Defendants' brief in support of its motion to dismiss the Complaint will be referred to hereinafter as "Ind. Def. Br." (D.E. 9); Hudson County's brief in support of its motion to dismiss with be referred to hereinafter as "Hudson Br." (D.E. 14); Plaintiffs' opposition to the Individual Defendants' motion to dismiss will be referred to as "Pl. Opp'n" (D.E. 20); and the Individual Defendants' reply brief in further support of their motion will be referred to hereinafter as "Ind. Def. R.Br." (D.E. 21).

violation of his constitutional rights. The Court held oral argument on May 9, 2017. D.E. 28. The Court has considered all submissions as well as the parties' oral arguments. The Court grants Hudson County's unopposed motion, and Count V is dismissed without prejudice. The Court grants in part and denies in part the Individual Defendants' motion. The Individual Defendants' motion is granted as to Due Process, and Count III is dismissed without prejudice. The motion is also granted as to excessive bail, and Count IV is dismissed without prejudice. Additionally, the Individual Defendants' motion is granted as to Detective Rosario, and Counts I, II, III, and VI are dismissed as to Rosario without prejudice. The remainder of The Individual Defendants' motion is denied as to Detectives Sojak, Kolich, and Spirito, and Counts I, II, VI, VII, VIII, IX, and X remain as to the three detectives.

## I.  BACKGROUND

The facts are derived from Plaintiff's Complaint as well as the transcript of S.S.D.'s interview attached to the Individual Defendants' motion to dismiss.[3] After a sexual encounter on November 10, 2014 in Plaintiff's dormitory room at Saint Peters University ("Saint Peters") in Jersey City, a freshman female student, S.S.D., alleged that Plaintiff sexually assaulted her. Compl. ¶ 17. Scott Torre, the director of campus safety at Saint Peters, contacted Sojak, a detective at the Hudson County Prosecutor's Office ("HCPO"), about the alleged sexual assault. *Id.* ¶ 18. Subsequently, Sojak made arrangements for S.S.D. to have a sexual assault examination at Christ Hospital. *Id.* ¶ 19. Following the exam, S.S.D. was brought to HCPO's Special Victim's Unit to

---

[3] When reviewing a motion to dismiss, the Court accepts as true all well-pleaded facts in the complaint. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). The Court can also consider "the factual allegations contained in other documents, such as documents referred to in the complaint and matters of public record if the claims in the complaint are based upon those documents." *In re Milestone Sci. Sec. Litig.*, 103 F. Supp. 2d 425, 450 (D.N.J. 2000).

provide a formal videotaped statement. *Id.* ¶ 20. Plaintiff alleges that S.S.D. gave three different versions of the alleged sexual assault in her statement. *Id.* ¶ 21.[4] The interviews all took place the same day and can be viewed as either one interview, with breaks and follow-up, or "three" interviews as Plaintiff posits.

S.S.D.'s Interview

S.S.D. described meeting Plaintiff on November 10, 2014, in a mail room and they then went to lunch together. S.S.D. Tr. 08:14-08:25. At lunch, S.S.D. told Plaintiff that she had a boyfriend. *Id.* 08:25-09:01. After lunch, S.S.D. alleged that "[Plaintiff] brought [her] to his dorm, which [she] wasn't really comfortable with." *Id.* 09:07-09:08. Plaintiff proceeded to ask S.S.D. questions about her boyfriend. *Id.* 09:12-09:13. S.S.D. then described how Plaintiff sat next to her and asked if he could kiss her, to which she replied, "No." *Id.* 09:11-09:20. Plaintiff then allegedly asked S.S.D. if she trusted him, and she responded, "No," since she did not know him well enough. *Id.* 09:16-09:20.

Plaintiff points out that S.S.D. added details in later versions, including that Plaintiff kissed her "probably like two" times and that Plaintiff "kiss[ed] her on her cheek and stuff." Compl. ¶ 31. At this point, S.S.D. explained that she was "starting to get a little bit scared" because she did not know what Plaintiff was going to do. S.S.D. Tr. 21:15-21:19. S.S.D. also discussed how

---

[4] The Court does not agree with Plaintiff's characterization of S.S.D.'s statement. S.S.D.'s interview progressed from a general overview of the incident, followed by more detailed questioning by Sojak. Because of this, S.S.D.'s allegations became more detailed and focused as the interview progressed. Thus, to the extent there are inconsistencies, they concern relatively minor details and are in response to specific questions asked by Detective Sojak. The Court therefore does not find S.S.D.'s interview internally inconsistent to the extent argued by Plaintiff. Of course, any perceived inconsistencies would be fair game for cross-examination, but S.S.D.'s version of the assault did not change in any significant manner during the course of the interview session.

Plaintiff wanted to see her phone. *Id*. 22:11-22:12. Over S.S.D.'s objection, Plaintiff went through her phone until S.S.D. "took the phone back." *Id*. 22:14-22:18.

According to S.S.D., Plaintiff then asked her to lay down, to which she responded, "No," because she did not know Plaintiff well. *Id*. 22:20-23:02. Plaintiff told S.S.D. that he wanted her to trust him and asked her if she could see them "going out in the future." *Id*. 23:04-23:19. At this point, S.S.D. stated that she was agreeing with Plaintiff because she "wasn't trying to make him mad." *Id*. 23:10-23:15. In response to Plaintiff asking S.S.D. to put her legs on the bed, she again said, "No." *Id*. 24:08-24:09. Plaintiff responded by saying, "Don't be scared" and "I'm not gonna bite." *Id*. 24:10-24:11. Then, Plaintiff proceeded to touch S.S.D., going under her shirt and touching her breasts. *Id*. 26:01-26:16. At this point, S.S.D. asked Plaintiff for a tissue and Plaintiff went to the bathroom to retrieve one. *Id*. 26:19-27:03; Compl. ¶ 40. When Plaintiff returned from the bathroom, "he was still trying to go [] up [S.S.D.'s] shirt." S.S.D. Tr. 27:01-27:03. S.S.D. indicated that Plaintiff kept touching her and then started to pull down her pants. *Id*. 08:14-08:25. When Plaintiff touched S.S.D., she responded, "No." *Id*. S.S.D. reiterated that she became scared because she did not know what Plaintiff was going to do. *Id*. When Plaintiff tried to pull down S.S.D.'s pants, she again said, "No," and she then "tried to pull [her pants] . . . back up." *Id*. 10:02-10:06. While S.S.D. was trying to pull her pants up, Plaintiff attempted to hold her arms down so he could continue to remove her pants. Compl. ¶ 52; S.S.D. Tr. 42:19-42:21 ("[Plaintiff] was trying to block my hands from pulling my pants back up."). Finally, S.S.D. described how Plaintiff succeeded in taking off her pants. S.S.D. Tr. 27:21-27:23.

At this point, S.S.D. alleged that Plaintiff "tried to have sex with her – and he did." *Id*. 10:06-10:07. S.S.D. said that "it was kind of working out and then he told [S.S.D.] to move like the long way on the bed . . . and that's when he really had it in." *Id*. 29:12-29:17. S.S.D. describes

4

the sex as lasting "three to four minutes." *Id.* 10:07-10:08. Afterwards, S.S.D. states that Plaintiff put his pants back on, and they went downstairs where Plaintiff went to the computer lab to print something out. *Id.* 30:06-30:08. Then, Plaintiff signed S.S.D. out of the building. *Id.* 10:09-10:12. Subsequently, Plaintiff returned to work at the mail house and S.S.D. went back to her dormitory room. *Id.* 10:13-10:16.

R.T.'s Interview

Following S.S.D.'s interview, Detective Sojak interviewed S.S.D.'s father, R.T. *See* Compl. ¶¶ 53-62. The Complaint alleges that R.T. told Sojak that S.S.D.'s boyfriend "got R.T. involved on a three-way call, urging S.S.D. to tell him what happened." *Id.* ¶ 56. R.T. told Sojak that when he asked S.S.D. what happened, she said that "a young man had raped her in the room"; that the man did not force her into the room; and that when they got to the room, Plaintiff began asking if he could kiss her. *Id.* ¶ 57. R.T. also reported that S.S.D. said that Plaintiff "just forcibly forced himself upon her." *Id.* ¶ 59. In response to R.T. asking S.S.D. whether Plaintiff had only touched her, she replied "no, he did the whole thing . . . I let him do it." *Id.* ¶ 60. Additionally, when R.T. asked S.S.D. if she fought Plaintiff, she replied, "No, because I didn't know what he had." *Id.* ¶ 61.

Arrest & Probable Cause Report

A probable cause report (the "PC report") was created on November 12, 2014. *Id.* ¶ 63. Detective Kolich authored the report. *Id.* Detective Spirito was the supervising officer who approved the report. *Id.* That same day, Detectives Kolich and Rosario arrested Plaintiff at his dorm room at 5:20 p.m. *Id.* ¶¶ 70, 84. Plaintiff was charged by way of complaint with second degree sexual assault in violation of N.J.S.A. 2C:14-2(c)(1).

This arrest was pursuant to a criminal complaint and arrest warrant (the "Warrant") issued by the Honorable Joseph V. Isabella, a New Jersey Superior Court Judge. *Id.* ¶¶ 82, 83. The Warrant indicates that it was sworn and subscribed to by Detective Sojak. Probable cause is indicated on the Warrant as follows:

> ** PROBABLE CAUSE FOR THE ISSUANCE OF THIS WARRANT IS THE DIGITALLY RECORDED INTERVIEW OF THE VICTIM WHERE SHE STATED SHE WAS WITH THE [PLAINTIFF] IN HIS DORMATORY (sic) ROOM AND THE [PLAINTIFF] ATTEMPTED TO KISS HER AND VICTIM SAID NO. THE [PLAINTIFF] THEN FORCIBELY (sic) PULLS DOWN HER PANTS AND INSERTS HIS PENIS INTO HER VAGINA AGAINST HER WILL WHILE THE [PLAINTIFF] IS HOLDING HER ARMS DOWN. **

D.E. 25, at 3. In the Warrant, Judge Isabella also set bail at $250,000, payable in either cash or bond. Compl. ¶ 82. Plaintiff, unable to meet the bail, remained in jail until he was released on his own recognizance on December 2, 2014. *Id.* ¶¶ 85-86. On December 22, 2014, HCPO administratively terminated Plaintiff's criminal case. *Id.* ¶ 87. Plaintiff subsequently brought the present action.

According to Plaintiff, the only document reviewed by Judge Isabella was the Warrant, not the PC Report.[5] Plaintiff alleges that the PC Report refers to the Warrant and Plaintiff's arrest, so Judge Isabella could not have reviewed the PC Report before issuing the Warrant. Plaintiff also alleges that the Warrant left out key details contained in S.S.D.'s statements, R.T.'s interview, and the PC Report. *Id.* ¶¶ 80, 81. Plaintiff similarly argues that the allegation in the Warrant that Plaintiff had intercourse with S.S.D. while "holding her arms down" is not supported by any evidence and gives the mistaken impression that Plaintiff used force during intercourse.

---

[5] At this stage of the proceedings, and accepting all of Plaintiff's allegations as true, the Court assumes without deciding (solely for purposes of this motion) that Judge Isabella did not review the PC Report before signing the arrest warrant.

## II. PROCEDURAL HISTORY

Plaintiff filed his complaint on March 16, 2016 alleging ten causes of action: (1) a 42 U.S.C. § 1983 claim alleging "an unreasonable search and seizure in violation of the Fourth and Fourteenth Amendments to the United States Constitution," as well as "continued detention in custody on a high bail . . . in violation of the Eighth Amendment," and "a violation of the Due Process Clause of the Fourteenth Amendment;" (2) a violation of Article I, Section 7 of the New Jersey Constitution; (3) a violation of Article I, Section 1 of the New Jersey Constitution; (4) a violation of Article I, Section 12 of the New Jersey Constitution due to excessive bail; (5) a vicarious liability claim against Hudson County; (6) a 42 U.S.C. § 1983 claim based on malicious prosecution; (7) a common law malicious prosecution claim; (8) a false arrest and imprisonment claim; (9) a negligent supervision claim; and (10) a negligence claim. D.E. 1.

In lieu of answering, the Individual Defendants moved to dismiss Plaintiff's Complaint on August 17, 2016. D.E. 9. Defendant Hudson County moved to dismiss on September 26, 2016. D.E. 14. Plaintiff opposed the Individual Defendants' Motion only. D.E. 20. On May 9, 2017, the Court held oral argument. Subsequently, the Court allowed each party to submit additional briefing.[6]

## III. STANDARD OF REVIEW

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a defendant to move to dismiss a count for "failure to state a claim upon which relief can be granted[.]" To withstand a motion to dismiss under Rule 12(b)(6), a plaintiff must allege "enough facts to state a claim to relief that is *plausible on its face*." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (emphasis

---

[6] The Individual Defendants' supplemental brief in support of their motion to dismiss will be referred to hereinafter as "Ind. Def. Supp. Br." (D.E. 29) and Plaintiff's supplemental brief in opposition to the motion to dismiss will be referred to hereinafter as "Pl. Supp. Opp'n." D.E. 30.

added). A complaint is plausible on its face when there is enough factual content "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the plausibility standard "does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted). As a result, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of [his] claims." *Id.* at 789.

In evaluating the sufficiency of a complaint, a district court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). A court, however, is "not compelled to accept unwarranted inferences, unsupported conclusions or legal conclusions disguised as factual allegations." *Baraka v. Syneevey*, 481 F.3d 187, 211 (3d Cir. 2007). Even if plausibly pled, however, a complaint will not withstand a motion to dismiss if the facts alleged do not state "a legally cognizable cause of action." *Turner v. J.P. Morgan Chase & Co.*, No. 14-7148, 2015 WL 12826480, at *2 (D.N.J. Jan. 23, 2015). If, after viewing the allegations in the complaint most favorable to the plaintiff, it appears that no relief could be granted under any set of facts consistent with the allegations, a court may dismiss the complaint for failure to state a claim. *DeFazio v. Leading Edge Recovery Sols.*, No. 10-2945, 2010 WL 5146765, at *1 (D.N.J. Dec. 13, 2010).

## IV. DISCUSSION

Probable Cause

Plaintiff brings claims for false arrest, malicious prosecution, and unreasonable search and seizure in violation of the Fourth Amendment against Defendants.[7] Specifically, Plaintiff claims that he was arrested without probable cause in violation of his Fourth Amendment right to be free from unreasonable seizure. *See, e.g.*, Compl. ¶ 97. While Plaintiff was arrested pursuant to a warrant, he argues that the Warrant was not supported by probable cause. *Id.* This is because, argues Plaintiff, the Individual Defendants misrepresented the facts to Judge Isabella, who then found probable cause to issue the Warrant based on these misrepresentations. *Id.* ¶¶ 77-82.

The Individual Defendants contend that, as government officials, they are entitled to qualified immunity from Plaintiff's state and federal constitutional claims. Ind. Def. Br. at 12-13. Additionally, Defendants argue that they had probable cause to arrest Plaintiff, even after removing the allegedly incorrect information and inserting the allegedly omitted information from the Warrant. Ind. Def. R.Br. at 3.

The Fourth Amendment provides that people are "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, . . . and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation . . ." U.S. Const. amend. IV. This Amendment "prohibits a police officer from arresting a citizen except upon probable cause." *Orsatti v. N.J. State Police*, 71 F.3d 480, 482 (3d Cir. 1995). Probable cause exists if, at the time a suspect is arrested, "the facts and circumstances within the officers' knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the suspect had committed or was committing an offense." *Wright v. City of Phila.*, 409 F.3d

---

[7] Plaintiff alleges unlawful seizure, malicious prosecution. and false arrest and imprisonment in Counts I, II, VI, VII and VIII. *See* Compl. Since each of these claims turns on whether probable cause existed, the Court will analyze them together. *Reedy v. Evanson*, 615 F.3d 197, 232 n.22 (3d Cir. 2010).

595, 602 (3d Cir. 2005). The determination of whether there was probable cause requires a "common sense approach" based on "the totality of the circumstances." *Sharrar v. Felsing*, 128 F.3d 810, 818 (3d Cir. 1997). Furthermore, police may rely on the credible report of a single person, including the victim, to find probable cause. *See Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 790 n.8 (3d Cir. 2000); *see also Dempsey v. Bucknell Univ.*, 834 F.3d 457, 477–78 (3d Cir. 2016) ("[S]tatements of a victim witness are typically sufficient to establish probable cause in the absence of independent exculpatory evidence or substantial evidence of a witness's own unreliability that outweighs the probable cause that otherwise exists.") (internal quotation marks and citation omitted).

When an individual is arrested pursuant to a warrant, the Third Circuit applies a two-part test to determine whether the arrest lacked probable cause. *See Franks v. Delaware,* 438 U.S. 154, 155-56 (1978); *Lippay v. Christos,* 996 F.2d 1490, 1504 (3d Cir. 1993). This test requires the Court to determine: "(1) that the affiant knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant; and (2) that such statements or omissions are material, or necessary, to the finding of probable cause."[8] *Sherwood v. Mulvihill*, 113 F.3d 396, 399 (3d Cir. 1997) (citing *Franks,* 438 U.S. at 171-72). "This test helps ensure that a police officer does not make unilateral decisions about the materiality of information, or, after satisfying him or herself that probable cause exists, merely inform the magistrate or judge of inculpatory evidence." *Spiess v. Pocono Mountain Reg'l Police Dep't,* No. 10-287, 2013 WL 1249007, at *6 (M.D. Pa. Mar. 26, 2013) (internal quotation marks omitted).

---

[8] This test applies whether the alleged falsehood is an affirmative misrepresentation or an omission. *See United States v. Frost,* 999 F.2d 737, 742-43 & n.2 (3d Cir. 1993).

As to the first prong, omissions are made with reckless disregard where "an officer withholds a fact in his ken that any reasonable person would have known [] was the kind of thing the judge would wish to know." *Wilson v. Russo*, 212 F.3d 781, 788 (3d Cir. 2000) (internal quotation marks and citation omitted); *see also Andrews v. Scuilli*, 853 F.3d 690, 698 (3d Cir. 2017). An assertion "is made with reckless disregard when 'viewing all the evidence, the affiant must have entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported.'" *Wilson*, 212 F.3d at 788 (quoting *United States v. Clapp*, 46 F.3d 795, 801 n.6 (8th Cir. 1995)).

The second prong requires a court to determine the materiality of the misstatements and omissions by "[excising] the offending inaccuracies and insert[ing] the facts recklessly omitted, and then determin[ing] whether or not the 'corrected' warrant affidavit would establish probable cause." *Id.* at 789; *see also Badillo v. Stopko,* 519 F. App'x 100, 105 (3d Cir. 2013); *Paszkowski v. Roxbury Twp. Police Dep't*, No. 13-7088, 2014 WL 346548, at *3 (D.N.J. Jan. 30, 2014).

Recently, in *Dempsey v. Bucknell University*, 834 F.3d 457 (3d Cir. 2016), the Third Circuit clarified that "when a court determines that information was asserted or omitted in an affidavit of probable cause with at least reckless disregard for the truth, it *must* perform a word-by-word reconstruction of the affidavit." (emphasis added) (footnote omitted). In *Dempsey*, the Third Circuit noted that "[a]n officer seeking a warrant on the basis of probable cause must follow a two-step process." *Id.* at 469. First, the officer "swears to an affidavit containing a summary of the events that she believes give rise to probable cause." *Id.* Second, "the officer presents the affidavit to a neutral magistrate, who conducts his own independent review of the evidence to determine whether it does, in fact, establish probable cause, and, if so, issues a warrant." *Id.* The *Dempsey*

court therefore premised its holding on the assumption that there would, in fact, be an affidavit for a court to reconstruct.[9]

Here, Plaintiff alleges three critical misstatements and omissions made by the officers: (1) inserting that Plaintiff "forcibly" kissed S.S.D.; (2) omitting R.T.'s statement that S.S.D. said, "I let him do it;" and (3) inserting that Plaintiff forcibly held S.S.D.'s arms down *during* intercourse (as opposed to Plaintiff "trying" to hold S.S.D.'s arms down while he was pulling down her pants and she was trying to pull them back up). Moreover, Plaintiff points out that many statements by S.S.D., which would support a finding of consent, were omitted: S.S.D. voluntarily went to Plaintiff's room and sat on his bed, S.S.D. could have left when Plaintiff went to get her a tissue but did not, and S.S.D. voluntarily went with Plaintiff to the computer lab after the alleged assault. Plaintiff also notes that the Warrant fails to advise Judge Isabella that during the sexual act, S.S.D. adjusted her position at Plaintiff's request. Moreover, as noted, Plaintiff alleges that there was never a probable cause affidavit provided to Judge Isabella. Thus, according to Plaintiff, the only evidence regarding probable cause before Judge Isabella were the several lines quoted above in the Warrant itself. The Individual Defendants agree that "it should be assumed for the purposes

---

[9] The Individual Defendants point out that New Jersey does not require an affidavit to be attached to an application for an arrest warrant. Ind. Def. Supp. Br. at 3. New Jersey Court Rule 3:3–1 provides that an arrest warrant may be issued on a complaint only if "a judge, clerk, deputy clerk, municipal court administrator or deputy municipal court administrator finds from the complaint *or* an accompanying affidavit or deposition, that there is probable cause to believe that an offense was committed and that the defendant committed it and notes that finding on the warrant." N.J. Ct. Rule 3:3–1(a)(1) (emphasis added); *see also Garland v. Goodman*, No. 08-3674, 2009 WL 313330, at *5 (D.N.J. Feb. 6, 2009). Therefore, in New Jersey, an affidavit is not explicitly required for a warrant to issue. Nonetheless, the Individual Defendants have not pointed to any case law that reconstructs the warrant itself, rather than a supporting affidavit, and the Court could not find any such cases.

of the . . . motion, that the only information available to Judge Isabella when making his probable cause determination, was that which was reflected in the [Warrant]." *See* Ind. Def. Supp. Br. at 2.

At the outset, given Plaintiff's allegations, the Court dismisses the Complaint as to Rosario. The Individual Defendants argue that Plaintiff's claims should be dismissed against Rosario because Plaintiff does not allege that "Detective Rosario was personally involved in procuring (or even had knowledge of) the allegedly defective arrest warrant." Ind. Def. Br. at 33-34. The Court interprets the Individual Defendants' argument as one of plausibility, although it is couched in terms of "personal involvement."[10] As noted, Plaintiff's theory is that Sojak did not provide complete or accurate probable cause information to Judge Isabella when obtaining the Warrant. Rosario is merely alleged to have arrested Plaintiff pursuant to the Warrant. In short, there are no plausible allegations in the Complaint indicating that Rosario had any involvement in the probable cause information provided to Judge Isabella. Thus, the only remaining Individual Defendants are Sojak, Spirito and Kolich.[11] Nevertheless, the Court will still refer to the "Individual Defendants" in this Opinion because their arguments were presented collectively.

As to the Warrant, it is unclear as to what precisely Judge Isabella had access to when making his determination of probable cause. For example, the digitally recorded interview of S.S.D. is referenced in the Warrant but it is not clear from the pleadings whether the recording was made available to Judge Isabella. If the interview tape was provided to the judge, this Court would

---

[10] The Individual Defendants also make an argument as to vicarious liability concerning Rosario. *See* Ind. Def. Br. at 33-34. The Court does not understand this argument since the Complaint does not plead vicarious liability as to Rosario, but only pleads it with respect to Hudson County. *See* Compl. ¶¶ 102-107. Because the Court is granting the motion as to Rosario based on plausibility, the Court does not reach the vicarious liability argument.

[11] In light of Plaintiff's claims that the PC Report was not available to Judge Isabella, the Court does not see any plausible allegations as to Kolich or Spirito. However, the Individual Defendants did not raise this argument and the Court declines to do so *sua sponte*.

not need to reconstruct any information concerning S.S.D.'s statements since Judge Isabella would have had full access to her interview recording. Additionally, the Individual Defendants contend that an affidavit is not required for a judge to sign off on an arrest warrant, but rather "[the] sworn oral testimony of a law enforcement applicant is sufficient." Ind. Def. Supp. Br. at 3 (citing N.J. Criminal Court Rule 3:2-3(b)). Again, the Court does not know whether Judge Isabella had access to the sworn oral testimony of Detective Sojak, and if so, what that testimony consisted of. The Warrant does indicate that it was sworn and subscribed to by Sojak, but it is silent as to whether Sojak also provided any verbal information to Judge Isabella. For purposes of the current motion, and as agreed to by the parties, the Court assumes that Judge Isabella only had access to the information contained in the Warrant itself; Judge Isabella did not have a copy of S.S.D.'s recorded statements and Sojak (while sworn) did not provide any pertinent information verbally to the judge.

The Individual Defendants argue that, even after excising the assertions and inserting the omissions into the warrant, there remains sufficient allegations to meet probable cause for second degree sexual assault.[12] In doing so, the Individual Defendants rely largely on the New Jersey Supreme Court's decision in *In re M.T.S.*, 129 N.J. 422, 441 (1992).

---

[12] The Individual Defendants argue that if there is probable cause for any crime (even a lesser, uncharged crime), then the officers are still protected under the law. Ind. Def. Br. at 15. Here, the Individual Defendants argue that there was clearly probable cause for criminal sexual contact in violation of N.J.S.A. 2C:14-3(b). Criminal sexual contact is a fourth degree offense under New Jersey law, while the criminal sexual assault that Plaintiff was charged with is a second degree offense. Significantly, Plaintiff was never charged with the lesser offense of criminal sexual contact.
The Individual Defendants do not provide any support for their contention that they must only show that probable cause existed for any potential, uncharged, and lesser offense. The Court found cases in this Circuit which held that probable cause need exist for only one offense if more than one crime is charged. *See Dempsey*, 834 F.3d at 477 ("[F]alse arrest or imprisonment claims will necessarily fail if probable cause existed for any one of the crimes charged against the arrestee[.]" (citing *Johnson v. Knorr*, 477 F.3d 75, 83 (3d Cir. 2007)); *Peterson v. Corbett*, No. 08-2292, 2012 WL 12864183, at *6 (M.D. Pa. Dec. 13, 2012) ("In order for Defendant [] to have properly arrested Plaintiff, he must have had probable cause for one of the charges in the Complaint

Second degree sexual assault pursuant to N.J.S.A. § 2C:14-2(c)(1) provides that "[a]n actor is guilty of sexual assault if he commits an act of sexual penetration with another person" in a situation where the actor "uses physical force or coercion, but the victim does not sustain severe personal injury." The term "sexual penetration" is defined in Section 2C:14-1(c) and includes "vaginal intercourse." However, the phrase "physical force" is not defined in New Jersey's physical force statute, and the task of doing do "was left to the courts." *In re M.T.S.*, 129 N.J. at 441.

In *M.T.S.*, the New Jersey Supreme Court defined "physical force" as an act of sexual contact or penetration combined with the absence of affirmative and freely given consent by the alleged victim. *Id.* at 444. In other words, the *M.T.S.* Court found that the act of sexual penetration in and of itself sufficiently satisfied the physical force element. *Id.* Thus, the Court held that the government was not required to prove physical force "extrinsic of the sexual act." *Id.* This definition placed the focus on the defendant's conduct and state of mind rather than the victim's. *Id.* at 448. Further, the Court determined that permission for the act of sexual penetration could "be indicated either through words or through actions that, when viewed in the light of all the surrounding circumstances, would demonstrate to a reasonable person affirmative and freely-given authorization for the specific act of penetration." *Id.* at 447-48. Put differently, the Court in *M.T.S.* found that "[p]ermission is demonstrated when the evidence, in whatever form, is sufficient to demonstrate that a reasonable person would have believed that the alleged victim had affirmatively and freely given authorization to the act." *Id.* at 445.

---

and Affidavit of Probable Cause."). Here, there was only one crime charged – the second degree sexual assault. The Court declines to extend the prior holdings to uncharged, lesser offenses, as the Individual Defendants urge.

*M.T.S.* addressed only the situation in which there was no physical force in addition to the penetration itself. *Id*. at 447-48 (noting that the analyses applies to "case[s] such as this one, in which the State does not allege violence or force extrinsic to the act of penetration"). "Evidence of force against the victim in excess of that inherent in the act of penetration is sufficient proof of [a lack of affirmative and freely-given permission.]" *State v. Jones*, 308 N.J. Super. 174, 187 (App. Div. 1998). In other words, under New Jersey law, "physical force" in second degree sexual assault is satisfied when penetration occurs so long as the alleged victim did not affirmatively and freely gave his/her consent. Yet, physical force used in addition to the force necessary for the act of penetration, the lack of affirmatively and freely given consent can be established without any additional showing.

In this matter, the Warrant before Judge Isabella indicated that during intercourse, Plaintiff used physical force *in addition to* the force inherent in the act of penetration. Specifically, the Warrant indicates that Plaintiff had intercourse with S.S.D. "against her will while [Plaintiff] is holding her arms down." However, S.S.D. never alleged that Plaintiff held her arms down at that point, instead asserting that Plaintiff attempted to hold her arms back when she tried to pull up her pants.[13] The Court's task is further complicated by the fact that no separate probable cause affidavit was provided to Judge Isabella.

The Court now turns to the two-prong test enunciated by the Third Circuit in *Dempsey*. As to the first prong, and at this stage, the Complaint sufficiently establishes, at the very least, that the alleged misstatements and omissions were made "with a reckless disregard for the truth." Standing alone, the allegation that the intercourse occurred while Plaintiff held S.S.D.'s arms down is

---

[13] The Individual Defendants do not argue that this physical force, attempting to hold S.S.D.'s arms down while Plaintiff was pulling down her pants, is sufficient force extrinsic to the act of penetration itself. As a result, the Court does not address the issue.

sufficient to meet the first prong. S.S.D. never made this allegation nor did R.T., S.S.D.'s father. There is no support for such allegation in the materials available to Sojak before the signing of the Warrant (or after, for that matter). Sojak is also the one who took the recorded statements from S.S.D. and is the one who spoke with R.T., so he did not rely on any other person to convey the facts to him. Moreover, Sojak took the statement from S.S.D. just one day before swearing out the Warrant. The Complaint plausibly sets forth facts that the misstatements and omissions in the Warrant made by Sojak should have led Sojak to have "serious doubts as to the truth of his statements." Any reasonable judge would have wanted to know whether Plaintiff used physical force, extrinsic to the act of penetration, when committing the alleged assault.

Turning to the second prong, the materiality of the omissions and misstatements, the Court finds that one of the alleged misstatements and one of the alleged omissions were immaterial. Plaintiff first argues that Sojak wrongly indicated that Plaintiff "forcibly" kissed S.S.D., omitting that Plaintiff had first asked S.S.D. if he could do so. However, even if Plaintiff did ask S.S.D., she told him, "No," but he kissed her anyway. Thus, even under Plaintiff's proffered version of events, he kissed S.S.D. against her consent.

The Court also does not find the alleged omission from R.T.'s statements to be material. Plaintiff argues that Sojak should have recounted that S.S.D. said that she "let him do it," according to R.T. First, this statement is not inconsistent with S.S.D.'s interview because she never claimed that she physically stopped Plaintiff from having sexual intercourse with her. Additionally, R.T.'s statement included numerous allegations that were inculpatory towards Plaintiff, including that S.S.D. told R.T. that Plaintiff had raped her. And R.T. never reported that S.S.D. retracted this statement – that she was raped by Plaintiff. Thus, R.T.'s statements, if included in their entirety, would support a finding of probable cause.

However, the misstatement that Plaintiff held S.S.D.'s arms down while he had sex against her will is material. This statement gives the mistaken impression that Plaintiff used physical force extrinsic to the act of penetration during the act. Once this misstatement is excised from the warrant, Judge Isabella was faced with a different scenario, that is, determining whether there was probable cause that S.S.D. had not affirmatively and freely gave her consent based on all of the relevant surrounding facts and circumstances. At that point, the type of information that a neutral magistrate would want to know in determining probable cause becomes much broader than when the judge is presented with the scenario that the assailant used physical force, in addition to the act of penetration, while committing the assault.

Nevertheless, the Individual Defendants urge the Court to reconstruct the Warrant and find that there was probable cause for a charge of second degree sexual assault. The Individual Defendants argue that even if Plaintiff did not use physical force extrinsic to the act of penetration, there was still sufficient information establishing probable cause that S.S.D. did not affirmatively and freely give her consent. The difficulty with the Individual Defendant's argument, however, is that there is no separate probable cause affidavit to reconstruct. Instead, the Court would for the most part be constructing, rather than reconstructing, the statements for probable cause. While the Court can certainly reconstruct the few lines of probable cause in the Warrant, the Court would also have to augment the statement with substantially more information to comply with its duties. The Court has not found a case in this Circuit that advocates such an approach, and the Individual Defendants have not cited to one. As a result, the Court will not dismiss as to the Individual

Defendants at this time. The Court believes that the prudent course is to permit discovery to go forward so that a complete record can be developed.[14]

Therefore, at this stage, the Court finds that Plaintiff has adequately pled a lack of probable cause as required in Counts I, II, VI, VII and VIII regarding the Individual Defendants other than Rosario. Next, the Court will address the defense of qualified immunity.

Qualified Immunity

The Individual Defendants argue that they are entitled to qualified immunity. Ind. Def. Br. at 12-24. "Qualified immunity shields government officials from personal liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Paszkowski*, 2014 WL 346548, at *2. A court must engage in a two-part inquiry to determine whether qualified immunity applies: (1) "whether the allegations, taken in the light most favorable to the party asserting the injury show the officer's conduct violated a federal right;" and (2) "whether the law was clearly established at the time of the violation." *Ihlenfeld v. Darby Borough Police Dep't*, No. 16-01990, 2017 WL 132169, at *6 (E.D. Pa. Jan. 13, 2017). "The defendant has the burden of establishing qualified immunity." *Id*.

As noted above, Plaintiff has plausibly pled sufficient facts at this stage to demonstrate that the Individual Defendants violated his constitutional right of being arrested and imprisoned only upon a showing of probable cause. *See Lippay*, 996 F.2d at 1504 (stating that if the *Franks* two-prong test is met, "the officer[s] obviously failed to observe a right that was clearly established,"

---

[14] After discovery, it may not be necessary to reconstruct the probable cause statement in the Warrant. For example, discovery may disclose that Judge Isabella had access to S.S.D.'s recorded statement. In that case, the Court will not have to reconstruct the probable cause statement in the Warrant, but will instead analyze the recorded statement in light of the relevant probable cause standard.

and "[they are] not entitled to qualified immunity"). Since the right to be free from arrest and prosecution except on probable cause is a clearly established right, *see Andrews*, 853 F.3d at 705,[15] and Plaintiff has demonstrated a sufficient violation of that right to withstand a motion to dismiss, the Court will not grant the Individual Defendants qualified immunity at this time. Thus, the motion is denied without prejudice as to qualified immunity. Counts I, II, VI, VII and VIII remain.

Fourteenth Amendment Claims

The Individual Defendants additionally argue that Plaintiff cannot proceed on his Fourteenth Amendment claims. Ind. Def. Br. at 28-30. This is because, argue Defendants, Plaintiff's claims for restrictions of liberty occurred pre-trial, and pre-trial claims must be analyzed pursuant to the Fourth, not Fourteenth, Amendment. *Id.* at 28-29. Plaintiff responds that Defendants have mischaracterized the Complaint and that it did not, in fact, claim any Fourteenth Amendment Due Process Clause claims. Pl. Opp'n at 37-38. The Court therefore considers this argument conceded, and, to the extent that any of Plaintiff's claims allege violations of due process, they are dismissed.[16]

---

[15] While the Individual Defendants argue against this, the Third Circuit recently confirmed that "[t]here is no question that the right to be free from arrest except on probable cause, [is] clearly established." *Id.*

[16] The Court does not agree with Plaintiff's characterization of his own claims. Count I alleges "a violation of the Due Process Clause of the Fourteenth Amendment." Compl. ¶ 89. Count III brings a claim pursuant to Article I, Section 1 of the New Jersey Constitution and specifically quotes from Paragraph I, which "protects both procedural and substantive due process rights." *Lewis v. Harris*, 378 N.J. Super. 168, 180 (App. Div. 2005). Therefore, the Court will dismiss the due process allegations in Count I as well as Count III.
Additionally, the Court agrees with the Individual Defendants that Plaintiff's claims are more appropriately characterized as Fourth Amendment claims. *See Cty. of Sacramento v. Lewis*, 523 U.S. 833, 842 (1998) ("Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims."); *Schneyder v. Smith*, 653 F.3d 313, 320–21 (3d Cir. 2011) ("[W]hen the government restricts the liberty of a person who has not been convicted of a crime for the purpose of securing

<u>Excessive Bail</u>

Next, the Individual Defendants argue that Plaintiff fails to state a claim for excessive bail under the Eighth Amendment.[17] Ind. Def. Br. at 28-32. The Individual Defendants make three arguments against Plaintiff's excessive bail claim: (1) the bail was not excessive as a matter of law; (2) Plaintiff did not plausibly plead that Defendants *caused* Plaintiff's bail to be excessive; and (3) no "controlling authority" dictates that a $250,000 bond is constitutionally excessive bail for sexual assault. Ind. Def. Br. at 30-32.

Plaintiff responds that Defendants "actually and proximately caused the bail to be excessive" based on Sojak's statements in the Warrant. Pl. Opp'n at 37. However, Plaintiff contends that at this stage, in the absence of discovery, the state interests that were balanced against the bail set is unknown. *Id.* Therefore, Plaintiff requests that this Court deny the Individual Defendants' motion with respect to Count Four.

The Eighth Amendment of the United States Constitution provides in relevant part that "[e]xcessive bail shall not be required[.]" U.S. Const. amend. VIII. The Eighth Amendment's prohibition against excessive bail is applicable to the states through the Due Process Clause of the Fourteenth Amendment. *See Sistrunk v. Lyons,* 646 F.2d 64, 66 (3d Cir. 1981). "In order to prevail

---

her court appearance, that restriction is a Fourth Amendment seizure."); *DiBella v. Borough of Beachwood*, 407 F.3d 599, 603 (3d Cir. 2005) (finding that pre-trial custody constitutes "a Fourth Amendment seizure"). Since Plaintiff did not brief the issue, and instead concedes it, the Court does not need to affirmatively decide whether the Fourteenth Amendment would apply to any of Plaintiff's claims.

[17] Plaintiff asserts Count IV pursuant to the New Jersey Constitution only. As discussed in more detail below, Plaintiff must bring all such constitutional claims pursuant to the New Jersey Civil Rights Act ("NJCRA"). Nonetheless, the excessive bail provision of the New Jersey Constitution is interpreted analogously to the Eight Amendment of the United States Constitution. *See Mullin v. Balicki*, No. 11-247, 2016 WL 3021721, at *4 (D.N.J. May 25, 2016). The Court will therefore analyze this claim pursuant to the Eighth Amendment.

on his excessive bail claim, [a p]laintiff must demonstrate that (1) bail was excessive in light of the valid state interests sought to be protected and (2) the defendants actually and proximately caused bail to be excessive." *Keeler v. City of Hammonton*, No. 11-02745, 2013 WL 6499257, at *4 (D.N.J. Dec. 11, 2013). In other words, "whether bail is excessive can only be evaluated properly through the lens of the interests the State sought to protect by imposing such bail." *White v. Hamilton TWP Police Dep't*, No. 14-4103, 2014 WL 4238494, at *3 (D.N.J. Aug. 26, 2014).

All parties agree that the bail here was set at $250,000, $50,000 above the maximum under the New Jersey bail guidelines, which calls for a range of $50,000 to $200,000. Nonetheless, the Court cannot determine at this stage whether this amount was excessive "in light of the valid state interests sought to be protected." *Keeler*, 2013 WL 6499257, at *4. Here, Plaintiff does not make any allegations about the state's interest. *See White*, 2014 WL 4238494, at *3 (dismissing excessive bail claim when plaintiff failed to submit "evidence concerning the state court judge's decision-making process, the factors he or she considered in making the bail determination, [or] any evidence of the State interests the judge took into account"). Therefore, Plaintiff has failed to plausibly plead that the bail was excessive and Count IV is dismissed without prejudice While the Court is aware that Plaintiff does not have access to particular information concerning the State's interests absent discovery, the Complaint's complete failure to address such interests is a fatal defect in the pleading.[18]

Sovereign Immunity

The Individual Defendants' final argument is that Plaintiff's common law claims should be dismissed because they are barred by sovereign immunity. Def. Br. at 34-39. The Individual

---

[18] Plaintiff did, however, plausibly plead the second element of an excessive bail claim, that is, the Individual Defendants (save Rosario) actually and proximately caused bail to be excessive.

Defendants argue that they work for the Hudson County Prosecutor's Office, which is an "arm of the state" for the purposes of sovereign immunity. *Id.* at 35-36. Since they have not waived such immunity, argue Defendants, they are not amenable to suit. *Id.*

The Eleventh Amendment provides that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Supreme Court interprets the Eleventh Amendment to protect states as well as their agencies and departments from suit in federal court. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). "Moreover, a suit may be barred by the Eleventh Amendment even though a state is not named a party to the action, so long as the state is deemed to be the real party in interest." *Benn v. First Judicial Dist. of Pa.*, 426 F.3d 233, 239 (3d Cir. 2005).

"[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989). As such, it is no different from a suit against the State itself. *Id.*; *see also Kentucky v. Graham*, 473 U.S. 159, 169 (1985) ("[The Eleventh Amendment] bar remains in effect when State officials are sued for damages in their official capacity."). On the other hand, a suit against a state official in his personal capacity is not subject to Eleventh Amendment immunity. *See Garden State Elec. Inspection Servs. Inc. v. Levin*, 144 F. App'x 247, 251 (3d Cir. 2005) (holding that the Eleventh Amendment does not bar suits for damages against officers sued in their personal capacities); *Blizzard v. Commander, Del. State Police Troop Nine*, 725 F. Supp. 2d 469, 473 (D. Del. 2010) ("An action under § 1983 is not barred as a matter of law against a public official in his personal capacity.").

Here, Plaintiff alleges that "each individual defendant named herein is sued in his and/or her individual capacity." Compl. ¶ 15. Thus, to the extent that the officers are sued in their individual/personal capacities, they are not protected by the Eleventh Amendment. *See Melo v. Hafer*, 912 F.2d 628, 636 (3d Cir. 1990) (finding that plaintiffs stating that the defendant was sued in her personal capacity and listed in the caption of the complaint was sufficient to show that plaintiffs sought to sue her in her personal capacity). Accordingly, the counts against the Individual Defendants in their personal capacities can proceed.

Additionally, Hudson County argues that it is an agent of the state for Eleventh Amendment purposes and therefore not amenable to suit. Hudson County Br. at 2 (citing *Wright v. State*, 169 N.J. 422 (2001)). Plaintiff concedes that dismissal of Hudson County is appropriate and Hudson County is dismissed. Pl. Opp'n at 40.

The New Jersey Civil Rights Act ("NJCRA")

"[C]ivil claims for violations of the New Jersey Constitution can only be asserted by way of the New Jersey Civil Rights Act." *Martin v. Unknown U.S. Marshals*, 965 F. Supp. 2d 502, 548 (D.N.J. 2013). Therefore, each of Plaintiff's claims brought pursuant to the New Jersey Constitution *must* be brought under the NJCRA. Plaintiff's Complaint is entirely void of any mention of the NJCRA. For some reason, however, Defendants did not move to dismiss on this ground. Instead, the Individual Defendants "assume[d]" that Plaintiff brought his constitutional claims pursuant to the NJCRA. Ind. Def. Br. at 11 n.1. As a result, the Court is not dismissing the New Jersey Constitutional Claims (Counts II, III, and IV). However, since the Court is permitting Plaintiff an opportunity to amend his complaint, if Plaintiff does so, he must properly base his state constitutional claims on the NJCRA.

**V. CONCLUSION**

In sum, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' motions. The Court **GRANTS** Hudson County's motion, and Count V is dismissed without prejudice. All Individual Defendants' motion is granted as to due process, and Count III is dismissed without prejudice. Their motion is also granted as to excessive bail, and Count IV is dismissed without prejudice. All remaining counts, as Rosario are dismissed without prejudice. The remainder of The Individual Defendants motion is denied and Counts I, II, VI, VII, VIII, IX and X remain as to Sojak, Kolich, and Spirito. Plaintiff has thirty (30) days to file an amended complaint, if he so chooses, and in accordance with this Opinion with Local Civil Rule 15.1.[19] An appropriate Order accompanies this Opinion.

**Date:** June 1, 2017

JOHN MICHAEL VAZQUEZ
UNITED STATES DISTRICT JUDGE

---

[19] Effective May 10, 2017, Local Civil Rule 15.1 states, in part, that:

> A party who files an amended pleading in response to an Order authorizing the filing of that pleading to cure a defect in its pleading shall file:
>
> (1) a copy of the amended pleading, complete with a handwritten or electronic signature; and
> (2) a form of the amended pleading that shall indicate in what respect(s) it differs from the pleading that it amends, by bracketing or striking through materials to be deleted and underlining materials to be added.